511 P.2d 289

Alfred H. McCLUSKEY, d/b/a McCluskey
Commissary, and McCluskey Commissary,
Inc., an Idaho corporation, Plaintiffs,
Cross-Defendants and Respondents,

v.

Leonard A. GALLAND and Lorna K. Gal-
land, husband and wife, Defendants-
Cross-Plaintiffs and Appellants,

v.

Harry McCLUSKEY and McCluskey Commis-
sary, Inc., Cross-Defendants
and Respondents.

No. 10772.

Supreme Court of Idaho.

June 22, 1973.

Gerald L. Weston, Miller, Weston & Tunnicliff, Caldwell, for appellants.

David L. Whitney, Alexanderson, Davis & Rainey, Caldwell, for respondents.

BAKES, Justice.

This is an appeal from a judgment in favor of an individual plaintiff, Alfred H. McCluskey, doing business as McCluskey Commissary, and a corporate plaintiff, McCluskey Commissary, Inc., an Idaho corporation, against the defendants, husband and wife, who allegedly executed three separate promissory notes and incurred an open account debt to the individual plaintiff. The defendants appeal from the judgment insofar as it is in favor of the individual plaintiff against the defendants and also appeal from an order of the trial court denying a motion to discharge and dissolve a writ of attachment.

The individual plaintiff initially filed a complaint against the defendants on February 27, 1969, upon two of the promissory notes made payable to "Alfred H. McCluskey, dba McCluskey Commissary," and upon the open account. After a crossclaim of the defendants against the initial plaintiff and others was dismissed by stipulation of the parties, the plaintiff then filed an amended complaint on January 23, 1970, which added another count on a third promissory note made payable to this plaintiff. When the action came for trial before the court in June of 1970, the plaintiff "moved the Court to join as an additional party plaintiff McCluskey Commissary, Inc., as a corporation." The trial court granted leave to amend and "ordered that McCluskey Commissary, Inc., as a separate entity be added as an additional party plaintiff to the Amended Complaint," and vacated the trial setting.

A second amended complaint was thereafter filed listing both the individual plaintiff and the corporate plaintiff as co-plaintiffs in the action and alleging that the individual plaintiff assigned the alleged promissory notes and open account to the corporate plaintiff in 1966, which is prior to the initial commencement of this action. Upon the subsequent trial of the action, the trial court, sitting without a jury, expressly found that "there has been sufficient assignment as to both the promissory notes and open account to the corporation." Neither party contests this finding upon this appeal.

At the conclusion of the trial no formal findings of fact and conclusions of law were made by the court, but the trial court gave its ruling from the bench in favor of both plaintiffs. The following inquiry was made to the court:

"MR. WESTON: (Attorney for Defendants) Who does the judgment run in favor of?

"THE COURT: I am going to have the judgment run in favor of both party plaintiffs. That will protect the defendants."

Pursuant to this ruling judgment was rendered against the defendants in favor of both plaintiffs, Alfred E. McCluskey, an individual doing business as McCluskey Commissary, and McCluskey Commissary, Inc., a corporation.

The first assignment of error by the defendants is that the trial court erred in granting judgment in favor of the individual Alfred H. McCluskey doing business as McCluskey Commissary, based upon the plaintiffs' allegations and proof that all of the promissory notes and open accounts, sued upon had been previously assigned to the corporate plaintiff. Accordingly, the defendant contends that the plaintiff Alfred H. McCluskey as an individual no longer had any right, title or interest in the promissory notes and open account, and was not a real party in interest in the action and therefore not entitled to judgment.

Contrariwise, the plaintiffs contend that the principles of common law permit an as-

signee to sue in the name of an assignor and in fact even required it. Assuming, without deciding, that plaintiffs' statement of the common law is correct, the plaintiffs overlook the fact that such common law rule has been modified twice in modern times in the State of Idaho by statute and rule of this Court.

Sections 5–301 and 5–302, Idaho Code, were adopted as early provisions of the statutory law of the State of Idaho requiring in part:

"Every action must be prosecuted in the name of the real party in interest, except as otherwise provided by this code." I. C. § 5–301.

These sections of the code were construed in the early case of Brumback v. Oldham, 1 Idaho 709 (1878), in which the assignees brought action upon open accounts which had been assigned to them. One of the defenses raised by the defendant was the fact that the action was not brought in the name of the assignors. This Court reviewed the question of who was the real party in interest as between an assignor and an assignee in light of Sections 5–301 and 5–302, Idaho Code, and concluded:

"The object of the foregoing provisions in the code was to abolish the distinction between the former practice of courts of common law and chancery, and give full effect at law as well as in equity to assignments of rights in action, by *permitting and requiring the assignee to sue in his own name*. If, as between assignor and assignee, the transfer is complete, so that the former is devested [sic] of all control and right to the cause of action, and the latter is entitled to control it and receive its fruits, the assignee is the real party in interest, whether the assignment was with or without consideration, and notwithstanding the assignee may have taken it subject to all equities between the assignor and third persons." 1 Idaho at 711.

. Rule 17(a), I.R.C.P., therefore superceded the statutory provisions of I.C. § 5–301, § 5–302. See R.E.W. Const.

In 1958 Rule 17(a), I.R.C.P., was adopted which was in all relevant respects identical to the then existing Federal Rule of Civil Procedure and expressly required that, "Every action shall be prosecuted in the name of the real party in interest . . . ." [1] The federal rule adopted as I.R.C.P. 17(a) has been construed in much the same manner as this Court had construed the statutory provisions of §§ 5–301 and 5–302, Idaho Code. One of the authorities summarizes the intent and purpose of the rule to the effect:

"An action shall be prosecuted in the name of the party who, by the substantive law, has the right sought to be enforced." 3A Moore's Federal Practice, § 17.02, p. 53.

The federal courts in construing the federal rule have consistently and repeatedly held that the assignee of a chose in action is the real party in interest and that action must be brought in his name. 3A Moore's Federal Practice, § 17.09, p. 273. See also 2 Federal Practice and Procedure, Barron & Holtzoff, § 482, p. 16, and 6 Federal Practice and Procedure, Wright & Miller, § 1545, p. 651, which summarizes the rule as follows:

"At common law the assignee of a chose in action did not hold legal title to it and could not qualify as the real party in interest. Indeed, in large measure the real party in interest concept developed as a means of eliminating this restrictive rule. Under present law an assignment passes the title to the assignee so that he is the owner of any claim arising from the chose and should be treated as the real party in interest under Rule 17(a)."

We therefore hold that under Rule 17(a), I.R.C.P., as under the preceding Sections 5–301 and 5–302, Idaho Code, an assignee of a valid assignment is the real party in interest to bring an action, and that the assignor is not the real party in interest and has no standing to prosecute

Co. v. Dist. Ct., 88 Idaho 426, 441, 400 P.2d 390 (1965).

an action on the chose in action. Accordingly, the judgment is reversed as to the plaintiff Alfred H. McCluskey, doing business as McCluskey Commissary on the grounds that he is not a real party in interest.[2]

The second assignment of error of the defendants is that the trial court erred in refusing to dissolve a writ of attachment issued in the action. Unfortunately, we do not have the benefit of examining either the affidavit in support of the writ of attachment or the writ of attachment itself, as they were not made a part of the record under the praecipe filed by the defendants-appellants. The only moving document with regard to the alleged writ of attachment is a "Notice of Hearing" filed ten days after the judgment, in which the defendants moved for an order directing that the writ of attachment be discharged upon the ground that it was improperly and irregularly issued.[3]

A hearing was held in the trial court pursuant to the notice of hearing and the motion to discharge or dissolve the writ of attachment was denied by order of the trial court. In this order the trial court makes reference to the writ of attachment issued on the 27th day of February, 1969, the date upon which the original complaint was filed. No other reference to this alleged writ of attachment can be found in the record. However, the statement in the order of the trial court, that the writ of attachment was issued on the 27th day of February, 1969, the date the original complaint was filed, is a part of the record and

can be accepted for purposes of determining the validity of defendants' assignment of error.

It is the contention of the defendants that the affidavit in support of the original attachment must necessarily have been false in that at the time of the issuance of the writ of attachment, upon filing of the original complaint, only Alfred H. McCluskey was a party plaintiff in the action. At the time of the issuance of the writ of attachment upon the filing of the original complaint, the corporate plaintiff was not yet a party to the action. The defendants reason that the attachment on February 27, 1969, in order to be legally sufficient, would have required an affidavit that the defendants are indebted to the plaintiff, that is the individual Alfred H. McCluskey, who was the only party plaintiff at that time, when in fact the undisputed testimony of Mr. McCluskey and the finding of the trial court establishes that he had previously assigned each of the claims to the corporate plaintiff McCluskey Commissary, Inc., a corporation.

First, no error may be assigned as a result of the trial court's action in denying the motion to discharge the writ of attachment which was made after judgment was entered. It is the general rule that any objection to the irregularities of an attachment proceeding must be made before the entry of judgment:

"Judgment is frequently viewed as the last limit of 'timely' objection to irregularities in the attachment proceeding; and it has consequently been held that a

---

2. There is no contest as to the true owner of the promissory notes; therefore, no resort need be had to the status of the corporate plaintiff as a bearer or holder of the promissory notes under the then effective Negotiable Instrument Law, and in particular § 27–104, Idaho Code, as it was in effect at the time of the assignment from the individual plaintiff to the corporate plaintiff in 1966. Cf. Ritter v. Moore, 64 Idaho 144, 128 P.2d 639 (1942); Anderson v. Coolin, 28 Idaho 494, 155 P. 677 (1916); Craig v. Palo

Alto Stock Farm, 16 Idaho 701, 102 P. 393 (1909).

3. While there is no written motion to dissolve or discharge the attachment, the notice of hearing is in conformance with Rule 7(b)(1) of the Idaho Rules of Civil Procedure permitting a notice of hearing for a motion which sets forth the grounds therefore. I.C. § 8–534 provides for the vacation or discharge of an irregular attachment upon motion by the defendant either before or after the release of the attached property or before the attachment shall have been actually levied.

motion to vacate or quash an attachment because of such defects may not be made after rendition of the judgment." 6 Am.Jur.2d, Attachment and Garnishment, § 424, p. 858.

This Court in Mitchell v. Ada Investment Co., 42 Idaho 421, 246 P. 10 (1926), has accepted this limitation upon the timeliness of a motion to dissolve or discharge a writ of attachment and has stated that if the matter proceeds to judgment, the validity of the attachment is thereby determined by the judgment:

> "That Sebree [defendant] could have gone into court, in the first action, and had the attachment discharged on account of the falsity of the affidavit would seem to be indisputable. C.S., §§ 6812 and 6814. It is submitted, however, that these sections apply to the *defendant* and his remedy is by *motion* in the action. One against whom an action is instituted and whose property is attached may not sit supinely by, and, after judgment is entered, have the attachment vacated merely because of the falsity of the affidavit for attachment . . . Both the regularity and propriety of the attachment were in issue in the action in which the affidavit was filed and the writ was issued, and were determined by the judgment in favor of the bank. Gooden v. Lewis, 101 Kan. 482, 167 Pac. 1133." 42 Idaho at 428, 246 P. at 11.

The motion of the defendant to dissolve or discharge the writ of attachment was therefore not timely and any irregularities were waived by the defendant in failing to make such a motion before judgment was rendered. Upon the entry of judgment, the attachment is merged into the judgment and no longer subject to attack by motion of the defendant.

However, Section 8–531, Idaho Code, expressly provides that if a defendant obtains a judgment in an action involving an attachment by the plaintiff, that the attachment is discharged as a matter of law and all property attached is released from the attachment. Accordingly, the reversal of the judgment in favor of the individual plaintiff operates to dissolve the attachment in favor of that plaintiff. As to the corporate plaintiff, it would appear from the scanty record presented to this Court that the writ of attachment apparently was issued on February 27, 1969, the date of the filing of the original complaint herein. As the corporate plaintiff was not made a party to this action until June of 1970, over one year after the filing of the initial complaint, the corporate plaintiff could have no interest in the attachment nor could it run to the benefit of the corporate plaintiff. Therefore, unless there was a separate writ of attachment issued in the action, concerning which the trial court may make further inquiry, any writ of attachment issued at the time of the filing of the original complaint is dissolved as a matter of law to the individual plaintiff and has no application to the corporate plaintiff later made a party to the action.[4]

The corporate plaintiff contends, however, that it should have the benefit of any writ of attachment issued prior to its becoming a party to the action based primarily upon Citizens Automobile Inter-Insurance Exchange v. Andrus, 70 Idaho 114, 212 P.2d 406 (1949). In that case the plaintiff filed an action against the defendant alleging that the plaintiff was a corpo-

---

4. In 1966 an additional sentence was added to Rule 17(a) of the Federal Rules of Civil Procedure which provides as follows:

"   .   .   .   No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or *joinder or substitution of,* the real party in interest;  and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest."

As this additional phrase has not been adopted as part of Rule 17(a) I.R.C.P., it has no application to the instant case so that no interpretation of its meaning or effect need be made on this appeal.

ration, and obtained a writ of attachment against property of the defendant. Later it appeared that the plaintiff was an unincorporated association and not a corporation. The plaintiff moved to amend its complaint to delete the allegation that it was a corporation, and the defendant moved to dissolve the attachment. The trial court granted the motion to amend the complaint but also granted the motion to dissolve the attachment. On appeal this Court reversed the order dissolving the attachment holding that the trial court was correct in permitting the amendment of the complaint to indicate that the plaintiff was an unincorporated association, but the order of the trial court in dissolving the attachment was reversed with instructions to reinstate the attachment. The reasoning of the *Andrus* case appears to be in accord with the general rule that an amendment merely correcting errors in the designation of the party plaintiff is not grounds to dissolve or discharge an attachment. 6 Am. Jur.2d, Attachment and Garnishment, § 416, p. 852; 7 C.J.S. Attachment § 493(5), p. 650.

However, the principle of the *Andrus* case is not applicable to the instant case. The initial plaintiff herein is an individual doing business under a firm name, and it was over a year after the filing of the initial complaint that the corporate plaintiff was joined as a "separate entity" and as "an additional party plaintiff." Therefore, in the instant case there are two separate parties joined as co-plaintiffs in this action while in the *Andrus* case there was but a single plaintiff originally denominated as a corporation by misnomer which was later corrected to reflect its correct legal status as an unincorporated association. As the corporate plaintiff, McCluskey Commissary, Inc., was not a party to this action until June, 1970, it cannot have the benefit of any attachment which might have issued in this action prior to the date on which it became a party plaintiff. There is no indication in the record as to whether a second attachment was issued after the corporate plaintiff became a party to this action, and

such a question is not before us on this appeal.

The judgment in favor of the individual plaintiff Alfred H. McCluskey, doing business as McCluskey Commissary, is hereby reversed which makes it unnecessary to rule on the order of the trial court refusing to dissolve the writ of attachment as said question is rendered moot by the reversal of the judgment in favor of Alfred H. McCluskey, dba McCluskey Commissary.

Costs to appellant.

DONALDSON, C. J., and SHEPARD, McQUADE and McFADDEN, JJ., concur.