90 P.3d 346

**PURCO FLEET SERVICES, INC., a Utah corporation, Petitioner–Respondent,**

v.

**IDAHO STATE DEPARTMENT OF FINANCE, Gavin M. Gee, Director, Respondent–Appellant.**

No. 29668.

Supreme Court of Idaho, Boise, March 2004 Term.

April 29, 2004.

Hon. Lawrence G. Wasden, Attorney General; Boise, for appellant. Rene Martin argued.

Pike & Smith, P.A., Idaho Falls; and Van Cott, Bagley, Cornwall & McCarthy, Salt Lake City, Utah, for respondent. Stephen K. Christiansen argued.

BURDICK, Justice.

This is an appeal by the Idaho Department of Finance (Department) from a district court's order setting aside an administrative cease and desist order issued by the Director of the Department of Finance (Director), requiring PurCo Fleet Services, Inc. (PurCo) to cease engaging in collection activity in Idaho without a permit under the Idaho Collection Agency Act, I.C. § 26–2221(2000). We reverse the district court.

## FACTUAL AND PROCEDURALBACKGROUND

PurCo is a Utah corporation in the business of acquiring, enforcing, and settling rental car damage claims. PurCo has never obtained or applied for a permit from the Department to operate as a collection agency in Idaho under the Idaho Collection Agency Act.

PurCo and CENTRAC, Inc., d/b/a Thrifty Car Rental (Thrifty) entered into a standard contract (PurCo Agreement), wherein the rental company assigns "all claims, rights and causes of action" for damaged vehicles to PurCo in consideration for cash payments, training, and consulting services. In January 2001, PurCo received an assignment of a claim from a Thrifty location in Washington State, against an Idaho resident, for damage to a rental vehicle that had occurred in Washington. For several months, PurCo at-

tempted to settle the damage claim. PurCo wrote its initial letter to the resident enclosing "information supporting this claim." PurCo then sent a demand letter on June 25, 2001, quoting a federal requirement: "We are attempting to collect a debt . . ." PurCo reported the unpaid claim marked as disputed, to a credit bureau. Thereafter, the Idaho Attorney General's office became involved.

On or about February 26, 2002, the Director received notice that PurCo may be acting as a collection agency in Idaho without the proper permits. After an investigation, counsel for the Department notified PurCo to immediately cease engaging in collection activity in Idaho until it had qualified under the Act. On July 1, 2002, the Director issued a cease and desist order, requiring PurCo to cease further collection efforts in Idaho and any other conduct requiring a permit under the Act. PurCo moved for reconsideration of the order, which was denied. PurCo moved for a second reconsideration after providing additional information not included in any of the previous communications. The Department denied the motion on August 21, 2002.

PurCo timely filed a petition for review of the Department's decision with the district court. On April 11, 2003, the district court held that PurCo was not a collection agency subject to the requirements of the Idaho Collection Agency Act, setting aside the Director's three orders, including the cease and desist order.

## ISSUES ON APPEAL

I. Did the Director properly conclude that PurCo had operated as a collection agency in Idaho in violation of the Idaho Collection Agency Act, and thus properly issue the cease and desist order and two subsequent reconsideration orders?

II. Is the Department entitled to attorney fees on appeal?

## STANDARD OF REVIEW

■ A person aggrieved by a decision by the Department of Finance may seek judicial review under the Administrative Procedure Act, Chapter 52, Title 67 Idaho Code. *Sagew-*

*illow, Inc. v. Idaho Dept. of Water Resources,* 138 Idaho 831, 835, 70 P.3d 669, 673 (2003). This Court reviews the agency record independently of the district court's decision. *Sagewillow, Inc.,* 138 Idaho at 835, 70 P.3d at 673. A reviewing court may not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. I.C. § 67–5279(1); *Idaho County v. Idaho Dept. of Health and Welfare,* 128 Idaho 846, 848, 920 P.2d 62, 64 (1996). This Court will affirm the agency action unless this Court finds that the action (a) violates constitutional or statutory provisions; (b) exceeded the agency's statutory authority; (c) made upon unlawful procedure; or (d) arbitrary, capricious, or an abuse of discretion. I.C. § 67–5279(2); *Sagewillow, Inc.,* 138 Idaho at 835, 70 P.3d at 673.

## ANALYSIS

**I. Did the Director properly conclude that PurCo had operated as a collection agency in Idaho in violation of the Idaho Collection Agency Act, and thus properly issue the cease and desist order and two subsequent orders on reconsideration?**

### A. *Jurisdiction:*

■■ The long-arm statute provides jurisdiction over an out of state company when it does an act in Idaho for pecuniary gain. I.C. § 5–514(a). The long-arm statute should be liberally construed. *McAnally v. Bonjac, Inc.,* 137 Idaho 488, 491, 50 P.3d 983, 986 (2002). Based on PurCo's purposefully directed activities in Idaho the exercise of jurisdiction over PurCo by the Director in issuing the cease and desist order is consistent with fair play. *State Department of Finance v. Tenney,* 124 Idaho 243, 247, 858 P.2d 782, 786 (1993). This Court concludes Idaho has personal jurisdiction over PurCo.

### B. *Enforcement Against PurCo*

■ PurCo has the burden to prove unconstitutional selective enforcement to establish impermissible activity by a state agency. *Levin v. Idaho State Bd. of Medicine,* 133 Idaho 413, 418, 987 P.2d 1028, 1033 (1999). In order to establish discriminatory application, PurCo must show "a deliberate plan of discrimination based upon some unjustifiable classification such as race, sex, religion, etc." *Id.* (citation omitted). PurCo has failed to meet its burden of proof.

### C. *Substantial Rights*

Purco argues substantial rights have been affected by the Department's actions. Idaho Code s 67–5279 provides:

(1) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

. . .

(a) in violation of constitutional or statutory provisions;

(b) in excess of the statutory authority of the agency;

(c) made upon unlawful procedure; or

(d) arbitrary, capricious, or an abuse of discretion.

The Court finds no substantial rights have been prejudiced by the Department's decision nor are there grounds for disturbing the Department's decision under the statute.

### D. *Rental Car Damage Recovery is a Claim or Other Indebtedness Under the Act*

■ The word "claim" is not defined in the Act nor has the term been interpreted by case law in accordance with the Act. Interpreting statutes is a question of law, over which this Court exercises free review. *Robison v. Bateman–Hall, Inc.,* 139 Idaho 207, 210, 76 P.3d 951, 954 (2003). When the language of the statute is unambiguous, the Court will give the language its plain meaning and refrain from applying statutory rules of construction. *Sweeney v. Otter,* 119 Idaho 135, 138, 804 P.2d 308, 311 (1990). If the words are in common use, they should be given the same meaning in a statute as they have among the people who rely on and uphold the statute. *Nagel v. Hammond,* 90 Idaho 96, 100, 408 P.2d 468, 472 (1965). Every word, clause and sentence should be given effect, if possible. *In re Permit No. 36–7200,* 121 Idaho 819, 822, 828 P.2d 848, 851 (1992). When construing a statute, its

words must be given their plain, usual and ordinary meaning. *Id.*

This Court, however, has adopted the interpretation of the Seventh Circuit Court that examined the term "claim" as used in the Bankruptcy Act: "The word 'claims' includes all demands of whatsoever character against the debtor or its property, whether secured or unsecured, liquidated, unliquidated, fixed or contingent." *Garren v. Saccomanno* 86 Idaho 268, 274, 385 P.2d 396, 399–400 (1963), *citing In Re Federal Facilities Realty Trust,* 220 F.2d 495 (7th Cir.1955). BLACK'S LAW DICTIONARY 240 (7th ed.1999) defines "claim" as follows:

> 1. The aggregate of operative facts giving rise to a right enforceable by a court. 2. The assertion of an existing right; any right to payment or to an equitable remedy, even if contingent or provisional. 3. A demand for money or property to which one asserts a right. 4. An interest or remedy recognized at law; the means by which a person can obtain a privilege, possession, or enjoyment of a right or thing; CAUSE OF ACTION. 5. A right to payment or to an equitable remedy for breach of performance if the breach gives rise to a right to payment. It does not matter whether the right has been reduced to judgment or whether it is fixed or contingent, matured or unmatured, disputed or undisputed, or secured or unsecured.

"Indebtedness" is defined as "1. The condition or state of owing money. 2. Something owed; a debt." BLACK'S LAW DICTIONARY 771 (7th ed.1999).

The word "claim" as defined above falls squarely within the meaning of the term as defined in the PurCo Agreement and within the letters mailed to the Idaho resident. The Court disagrees with the distinction drawn by the district court between claim and debt, or that offered by PurCo. Specifically, Pur-Co attempted to collect on a cause of action, which it termed a debt owed to Thrifty, and

PurCo demanded money owed. Under the PurCo Agreement, PurCo was obligated to collect monies owed to Thrifty from those who had damaged rental vehicles by their actions. When the Idaho citizen caused damage to one of Thrifty's vehicles, PurCo attempted to process the claim. In the PurCo Agreement, the term "file" was defined as "a claim for damage to a specific motor vehicle, and includes all documentation relating to the claim." PurCo defined "to process a file" as "to collect money for damage to a motor vehicle from any liable person by any lawful means available." According to the PurCo Agreement, Thrifty assigned all claims, rights, and causes of action to PurCo. The rental vehicle damage claim, which PurCo collected against the Idaho resident, constituted a claim or other indebtedness within the meaning of I.C. § 26–2223(2).[1]

### E. Assignment of the Claim v. Assignment for Collection

■ According to I.C. § 26–2223(2), if PurCo was attempting to collect on the claim it owned, then it was not acting as a collection agency. In other words, if Thrifty's claim was assigned in its entirety to PurCo, without recourse, then PurCo would be collecting on its own behalf. However, if the assignment was only for purposes of collection, then PurCo would be collecting on behalf of Thrifty, in violation of the Act.

"Assignment" is defined as "the transfer of rights or property." BLACK'S LAW DICTIONARY 115 (7th ed.1999). American Jurisprudence, Second Edition, defines "assignment" as:

> ... a transfer of property or some other right from one person (the 'assignor') to another (the 'assignee'), which confers a complete and present right in the subject matter to the assignee. An assignment is a contract between the assignor and the assignee, and is interpreted or construed in accordance to rules of contract construc-

---

1. I.C. § 26–2223. **Collection agency, debt counselor, or credit counselor permits.**—No person shall without complying with the terms of this act and obtaining a permit from the director:
 (1) Operate as a collection agency, collection bureau, collection office, debt counselor, or credit counselor in this state.

(2) Engage, either directly or indirectly in this state in the business of collecting or receiving payment for others of any account, bill, claim or other indebtedness.

tion. Ordinarily, the word 'assignment' is limited in its application to a transfer of intangible rights, including contractual rights, choses in action, and rights in or connected with property, as distinguished from transfer of the property itself. According to the Restatement of Contracts, an assignment of a right is a manifestation of the assignor's intention to transfer it by virtue of which the assignor's right to performance by the obligor is extinguished in whole or in part and the assignee acquires a right to such performance.

6 Am.Jur.2d Assignment § 1 (1999).

To be effective, an assignment must be completed with a delivery, and the delivery must confer a complete and present right on the transferee. The assignor must not retain control over the property assigned, the authority to collect, or the power to revoke.

6 Am.Jur.2d Assignment § 132 (1999).

 Idaho recognizes that choses in action are generally assignable. *McCluskey v. Galland,* 95 Idaho 472, 474–75, 511 P.2d 289, 291–92 (1973). An assignment may be done in such a way to be construed as a complete sale of the claim. 6 Am.Jur.2d Assignment § 147 (1999). However, an assignment that is absolute in form can be shown to be for purposes of collection only. *Id.* In order to determine the intent of the assignment, the Court looks to the contract between the assignor and assignee. *Id.* An assignment of the chose in action transfers to the assignee and divests the assignor of all control and right to the cause of action, and the assignee becomes the real party in interest. *McCluskey,* 95 Idaho at 474, 511 P.2d at 291. Only the assignee may prosecute an action on the chose in action. *Id.*

The PurCo Agreement requires Thrifty, the "assignor" to sue in its own name in small claims court. According to *McCluskey,* this demonstrates it is Thrifty that is the real party in interest as to the claim, not PurCo. *See id.* The Agreement also requires PurCo to provide Thrifty with information and instruction necessary for Thrifty to prosecute actions in small claims. Further, Thrifty was not divested of control and right to the cause of action. The PurCo Agreement allows Thrifty to access the claim and obtain copies of any correspondence and documents regarding the claim while it is in PurCo's possession. It is evident from the agreement on its face that PurCo did not receive a complete assignment of the claim.

Pursuant to the PurCo Agreement, Thrifty also had the right to revoke the assignment with thirty (30) days' written notice. This is inconsistent with an assignment of a chose in action. *See* 6 Am.Jur.2d § 132 (1999).

An assignee for collection holds any proceeds of the assigned claim in trust for the assignor. 6 Am.Jur.2d Assignment § 174 (1999). According to the PurCo Agreement, monies collected are to be placed in a trust account, from which PurCo disburses the appropriate sums to Thrifty after retaining a percentage of monies collected. The assignment created between PurCo and Thrifty was for the purpose of collection.

The PurCo Agreement does not support PurCo's argument that it was collecting on a claim it owned. Thrifty maintained control over the files and the claim, and it could sue in its own name. With thirty (30) days' written notice, either party could revoke the assignment. There is ample evidence that PurCo collected on Thrifty's behalf, in violation of the Act.

## II. IS THE DEPARTMENT ENTITLED TO ATTORNEY FEES ON APPEAL?

 The Department requests attorney fees pursuant to I.A.R. 41 and I.C. § 12–121. This rule does not provide a basis for awarding attorney fees on appeal, but simply allows the appellate court to award fees if some other contractual or statutory authority permits attorney fees. *Robbins v. County of Blaine,* 134 Idaho 113, 120, 996 P.2d 813, 820 (2000). The Department cites *United States Nat'l Bank of Oregon v. Cox,* 126 Idaho 733, 736, 889 P.2d 1123, 1126 (Ct.App.1995), as authority for an award of attorney fees, if the court is "left with an abiding belief that the appeal has been brought or defended frivolously, unreasonably, or without foundation."

The central issues on appeal are the interpretation of the word "claim," as found in

I.C. § 26–2223(2), and whether the PurCo Agreement was an assignment for collection purposes or an assignment of the entire claim. These are issues of first impression for this Court. A case of first impression does not constitute an area of settled law; therefore, the request for attorney fees should be denied. *Kidd Island Bay Water Users Co-op. Ass'n, Inc. v. Miller*, 136 Idaho 571, 575, 38 P.3d 609, 613 (2001).

## CONCLUSION

The Court concludes the Department of Finance had jurisdiction over PurCo pursuant to I.C. § 5–514(a), to issue the cease and desist order. The Court holds that collecting on unliquidated damages to a third party's rental automobile from the renter is asserting a "claim" within the meaning of I.C. § 26–2223(2). The Court also holds the agreement between PurCo and Thrifty is an assignment for collection, not a complete assignment. The Court does not award attorney fees because the issues raised are of first impression.

The Director's cease and desist order of July 1, 2002 is affirmed and reinstated. Costs are awarded to the respondent.

Chief Justice TROUT and Justices SCHROEDER, KIDWELL and EISMANN concur.